

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| AMAZIA MCFADDEN | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 7:05-0284-HFF |
| | § | |
| JAMES KENNINGTON, individually and as a police officer, City of Gaffney, SC; BRADLEY JAY WEBB, individually and as a police officer, City of Gaffney, SC; TONY K. COOPER, individually and as a police officer, City of Gaffney, SC; CHRISTY POOLE, individually and as a police officer, City of Gaffney, SC; RAY HUGHES, individually and as a police officer, City of Gaffney, SC; POLICE OFFICERS OF THE CITY OF GAFFNEY, SOUTH CAROLINA; and THE CITY OF GAFFNEY, SOUTH CAROLINA, | § | |
|     Defendants. | § | |

ORDER

## I.    INTRODUCTION

This case was filed as a civil rights action. Plaintiff also asserts state claims of negligence. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1367. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of this Court that Defendants' motion for summary judgment will be granted as to the federal causes of action. The state claims will be dismissed so that they can be adjudicated in state court.

## II.     FACTUAL AND PROCEDURAL HISTORY

   A.     Factual History[*]

On or about December 2, 2004, just before dark, Plaintiff was walking in his back yard when he came upon several men near the bushes behind his home. Plaintiff instructed the men to leave his yard but instead they began to climb on his van and to come further into his yard. At that point Plaintiff fired a .45 caliber pistol into the ground to scare the men away.

Shortly thereafter, Plaintiff attempted, to no avail, to get the attention of a police officer who was in the area. Unbeknownst to Plaintiff, another officer had come up behind Plaintiff and instructed Plaintiff to "drop the gun." Plaintiff complied with the officer's request and threw the gun out of reach. The officer told the Plaintiff to "get down" to which Plaintiff initially responded, "give me time, I'm sick." Plaintiff slowly knelt and then fully lay down on the ground. The officer then told Plaintiff to put his hands behind his back, and Plaintiff complied while the officer placed handcuffs on Plaintiff. Plaintiff was not held down while the cuffs were put on him and experienced no pain or problems during that time.

Plaintiff then lay motionless on the ground for five to ten minutes while the officer communicated on his radio. A couple of minutes later, two other officers arrived on the scene and began screaming at Plaintiff about the gun being stolen. Plaintiff attempted to communicate to the officers that the weapon was not stolen, but the officers kept yelling. The next thing Plaintiff recalls is someone stepping on the back of his neck and the screams resulting from the pain. Plaintiff has said that he is positive it was a foot used on the back of his neck because he felt a heel. Immediately

---

[*]This section has been adapted from Plaintiff's Response to Defendants' Motion for Summary Judgment. Citations to the record have been omitted.

2

thereafter, Plaintiff's neighbor, Steve Camp, came onto the scene and told the police that the gun was not stolen. The officers then put Plaintiff into a chair, at which point Plaintiff's face, nose and glasses were covered with mud and leaves. Plaintiff was released and has not been charged with any crime.

B.     Procedural History

Plaintiff filed the action in this Court on January 28, 2005, and filed an amended complaint on August 1, 2005. Defendants subsequently filed the instant motion for summary judgment. The Court, having been fully briefed on the relevant issues, is now prepared to render its judgment.

## III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*,

475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.

Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV. DISCUSSION AND ANALYSIS

### A. *Unlawful Seizure Claim–Generally*

Defendants contend that Plaintiff's constitutional claims related to an unlawful seizure must be dismissed because the evidence demonstrates as a matter of law that probable cause existed to seize the Plaintiff for violations of both a city ordinance and a state law. The Court agrees.

As a preliminary matter, it appears that Plaintiff has abandoned this claim inasmuch as he failed to address this issue in his response to Defendants' motion. Nevertheless, in an abundance of caution, the Court will address the claim below.

Probable cause is a "practical, nontechnical conception" that addresses "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quotation marks omitted). It is a "fluid concept" that cannot be "reduced to a neat set of legal rules." *Id*. at 232.

It appears to this Court that it is beyond dispute that the officers had probable cause to arrest Plaintiff. As detailed in Defendants' motion, Defendant officers responded to a complaint of gunfire in the evening hours of December 2, 2004, in a residential area known for a high level of criminal activity. (Motion 5.) While the officers were speaking with the complainant, they heard more shots coming from the direction of Plaintiff's home. (Motion 5.) When the officers found Plaintiff, he was standing in the yard holding a pistol in one hand and a rifle in another. (Motion 5.)

Plaintiff admitted that he had fired the pistol to scare off some young men who were trying to climb over a fence into Plaintiff's yard. Based on this admission, Plaintiff was in violation of the City of Gaffney ordinance which makes unlawful the discharge of a firearm within the city limits. Moreover, state law provides, in relevant part, that "[i]t is unlawful for a person to present or point

at another person a loaded or unloaded firearm. A person who violates the provisions of this section is guilty of a *felony*." S.C. Code Ann. § 16-23-410 (emphasis added).

Even if the Court were to decide that probable cause was not present, however, it would find that the totality of the circumstances provided the officers with a sufficient level of suspicion to briefly detain Plaintiff so that they could further investigate his conduct. *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause).

### B.   *Excessive Force Claim–Generally*

Defendants argue that Plaintiff's constitutional claims related to the amount of force used to seize him must be dismissed as a matter of law because the record demonstrates that there was no unreasonable or excessive force used in detaining or seizing Plaintiff. The Court is persuaded.

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). The Court determines whether an officer has used excessive force to effect a seizure based on a standard of objective reasonableness.

> We weigh the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. This test requires us to determine the reasonableness of an officer's actions and is not capable of precise definition or mechanical application. Instead it requires careful attention to the facts and circumstances of each particular case.

Id. (quotation marks omitted). Those facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.*" Graham*

6

*v. Connor*, 490 U.S. 386, 396 (1989). "The extent of the plaintiff's injury is also a relevant consideration." Jones, 325 F.3d at 527.

As already noted, the officers responded to a complaint of gunfire in the evening hours of December 2, 2004, in a residential area known for a high level of criminal activity. (Motion 5.) While the officers were speaking with the complainant, they heard more shots coming from the direction of Plaintiff's home. (Motion 5.) When the officers found Plaintiff, he was standing in the yard holding a pistol in one hand and a rifle in another. (Motion 5.)

Given the totality of the circumstances, the Court finds that Defendant Cooper's ordering Plaintiff at gunpoint to throw down his weapons and to lie down on the ground to be reasonable. In fact, Plaintiff appears to agree that the officer's actions were reasonable. (Plaintiff's Depo. 72:4-11) (stating that he accepted that it was reasonable for the officer to have his gun pointed at Plaintiff); *Id.* at 80:6-11 (agreeing that he did not have any problem with the officer handcuffing him and ordering him to the ground).

To the extent that Plaintiff argues that Defendants should have somehow treated him differently given his physical infirmity, that notion is rejected. Simply stated, this Court will not "require an officer to evaluate in some detail the physical condition of [a suspect] before securing the person for the safety of the officer and others during the search." *McCaskill v. Yankalunas*, No. 06-1739, 2007 WL 2161510 at *3 (4th Cir. July 27, 2007) (declining this request by the plaintiff). The evidence in the record establishes that Defendant Kennington's use of the ground-stabilization technique (wherein the officer places his knee on the subject's back, where the subject's shoulders and neck meet) constitutes, at most, a negligence claim– not a constitutional violation.

Plaintiff contends that one of Defendants stepped on his neck during the December 2, 2004 encounter, but he has failed to put forth any evidence as to which Defendant allegedly committed the act. In an action such as this, however, the plaintiff must demonstrate which individual Defendant's conduct violated the law. This burden means coming forward with specific facts establishing the violation. *Taylor v. Meacham,* 82 F.3d 1556, 1559 (10th Cir. 1996). "Plaintiff has the 'burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right.'" *Abeyta By & Through Martinez v. Chama Valley Ind. Sch. Dist. No. 19,* 77 F.3d 1253, 1255 (10th Cir. 1996) (quoting *Walter v. Morton,* 33 F.3d 1240, 1242 (10th Cir. 1994)). A plaintiff suing public officials must establish specific facts showing the personal involvement of each named individual defendant. *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997). Conclusory, non specific, and generalized allegations of constitutional deprivations are not sufficient. *Pride v. Does,* 997 F.2d 712, 716 (10th Cir. 1993). Accordingly, this claim fails.

Plaintiff has also failed to put forth evidence from which a reasonable juror could find that the officer's alleged excessive force caused any injury to Plaintiff. Although he has offered the opinion of his treating physician to establish such injury, his physician admits that he could not say with any reasonable degree of medical certainty that the abnormality as revealed in Plaintiff's MRI subsequent to the alleged incident on December 2, 2004, occurred sometime other than on December 2, 2004. (Dr. Phillip Esce's Depo. 61:23–62:5.)

Regarding Plaintiff's argument that the individual Defendants had a duty to intervene, the Court will dismiss the claim.

> Although personal liability premised on an omission is a disfavored concept, it is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability. The concept of

8

> bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly. *O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2d Cir.1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator").

*Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). Nevertheless, because Plaintiff has failed to establish that a violation occurred, any claim of bystander liability must also fail.

  *C. Excessive Force Claim--Defendants Cooper and Webb*

Defendants maintain that Plaintiff's Fourth Amendment allegations against Defendants Cooper and Webb must be dismissed as a matter of law where the record demonstrates no evidence that these officers intentionally applied any force to Plaintiff. For the reasons set forth above, the Court is convinced.

  *D. Fifth and Fourteenth Amendment Claims–Generally*

According to Defendants, Plaintiff's constitutional claims related to the Fifth and Fourteenth Amendments must be dismissed as a matter of law where the amended complaint alleges only an Fourth Amendment unreasonable seizure claim. The Court finds this argument availing.

Although there may be instances in which an unreasonable seizure would be analyzed pursuant to the Fifth or the Fourteenth Amendment, Plaintiff's instant claim is properly analyzed under the Fourth Amendment reasonableness standard. *Graham,* 490 U.S. at 395 (holding that all "claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

### E.    *Qualified Immunity–Defendants Kennington and Webb*

Defendants maintain that Defendants Cooper, Kennington, and Webb are entitled to qualified immunity because 1) there is no evidence of an underlying constitutional violation; and 2) if the Court were to find an underlying violation, that right was not clearly established at the time of this incident. The Court need not fully discuss this issue.

Determining whether a state officer is entitled to qualified immunity is a two-step inquiry. First, the Court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir.2002).

In the instant action, the Court finds that Plaintiff has failed to establish a violation of his constitutional rights. Therefore, the inquiry ends without consideration of the second prong.

### F.    *Sovereign Immunity–Defendant Webb*

Defendants state that Defendant Webb, as a State Constable, is entitled to dismissal in his official capacity because he is an officer of the State of South Carolina. In light of the foregoing discussion, the Court need not make this determination either.

### G.    *Respondeat Superior–City of Gaffney*

Defendants claim that Defendant City of Gaffney must be dismissed as a matter of law because 1) there is no allegation in the complaint related to an unconstitutional policy or practice; 2) there is no evidence of any unconstitutional policy or practice. The Court agrees.

In *Monell v. Department of Soc. Servs.,* 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental bodies constitute "persons" within the meaning of § 1983. *Id.* at 688-89. The Supreme Court, however, has consistently refused to impose § 1983 liability upon a municipality under a theory of respondeat superior. *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997). Rather, under *Monell* and its progeny, a municipality is subject to § 1983 liability only when "it causes such a deprivation through an official *policy* or *custom.* " *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999) (emphasis added).

The Fourth Circuit has determined that "[m]unicipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens." *Id.* (internal citations omitted). Municipal custom, on the other hand, may arise when a particular practice "is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks omitted).

Even if the Court were to conclude that the officers had violated Plaintiff's constitutional rights, the Court would find that Defendant City of Gaffney is not liable. First, § 1983 plaintiffs seeking to impose liability on a municipality must adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights. *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994). From its review of the amended complaint, the Court is unable to find that Plaintiff has pled such a policy or custom. Second, because the Court has found no constitutional violation here, there can be no municipal liability. Third, even if the Court had found merit in Plaintiff's § 1983 claim, it would not find Defendant City of Gaffney liable because Plaintiff has failed to establish that there was a

policy, practice, or custom in place at the time of the alleged violation that would expose Defendant City of Gaffney to liability.

### H.     State Claims

Defendants contend that Plaintiff's claims pursuant to State law must be dismissed as a matter of law because this Court lacks jurisdiction over the claims pursuant to S.C. Code Ann. § 15-78-100. Defendants also maintain that Defendants Cooper, Kennington, and Webb are improper defendants in a § 15-78-100 action. To the contrary, Plaintiff argues that this Court has jurisdiction over Plaintiff's state claims against pursuant to 28 U.S.C. § 1367.

Assuming, without deciding, that Plaintiff is correct, § 1367(c)(3) provides that the Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In its discretion, the Court has considered "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. Having weighed those factors, as well as Defendants' arguments above, the Court is of the opinion that the remaining state claims should be dismissed and adjudicated in state court.

## V.     CONCLUSION

Accordingly, based on the foregoing discussion and analysis, the Court concludes that 1) Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's federal claims and 2)

Plaintiff's state claims are **DISMISSED** so that they can be adjudicated in state court. The remaining motions are, therefore, rendered **MOOT**.

    **IT IS SO ORDERED.**

    Signed this 15th day of January, 2008, in Spartanburg, South Carolina.

                                  s/ Henry F. Floyd
                                  HENRY F. FLOYD
                                  UNITED STATES DISTRICT JUDGE